## Jennings, Beale & Co.'s Case.  Jennings's Appeal.  Howard's Appeal.

*Costs—Equity—Parties—Limited partnership.*

Where a bill in equity is filed in the name of a limited partnership association and certain members of the association, as plaintiffs, against another member of the association as defendant, and on appeal the Supreme Court orders the costs to be paid by plaintiffs, the decree for costs is against the individual plaintiffs, and not against the association.

*Limited partnership—Liquidating trustees—Credits.*

The liquidating trustees of a limited partnership association are entitled to credit for salaries paid to persons employed in the management and care of the business.

*Compensation of liquidating trustees.*

A member of a limited partnership association who acts as a liquidating trustee, is entitled to compensation for his services as trustee.

*Interest on purchase money—Liquidating trustees.*

Where the liquidating trustees of a limited partnership association who are also members of the association, purchase the property of the association, and secure the purchase money by a bond and mortgage payable when certain litigation between themselves and another member of the association shall be finally determined. the trustees are liable for interest on the whole amount of the purchase money.

Argued Oct. 10, 1893.   Appeals Nos. 93 and 107, Oct. T., 1893, by W. N. Howard et al., and Benjamin F. Jennings et al., from order of C. P. Armstrong Co., March T., 1890, No. 8, sustaining exceptions to the account of William N. Howard, Benjamin F. Jennings and James Hemphill, liquidating trustees of Jennings, Beale & Co., Limited.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to account of liquidating trustees of limited partnership association.   Before RAYBURN, P. J.

From the record it appeared that Jennings, Beale & Co., Limited, was a partnership association organized on Oct. 27, 1886, under the act of 1874 and its supplements, for the manufacture of steel, with its principal place of business in Leechburg, Armstrong county, Pa. Messrs. Joseph G. Beale, Benjamin F. Jennings and John Davis were the original stockholders. On June 25, 1889, the partnership was dissolved by an agreement in writing, signed by all the stockholders. At the time of the dissolution the shareholders were the same, with the addition of T. Dale Jennings. Joseph G. Beale held forty-five one-hundred-and-fiftieths of the stock, the remainder being held by the other three. James Hemphill, William N. Howard and Benjamin F. Jennings were elected liquidating trustees.

The dissolution agreement provided that if a satisfactory price could be obtained, the plant should be sold at private sale, and all the parties having given their consent in writing, the appellants B. F. Jennings et al. bought the plant from the liquidating trustees at the price of $100,000, $5,000 being paid down, and by consent of the appellants, paid over to Joseph G. Beale; the remainder of the purchase money being secured by bond and mortgage until the litigation then going on between the parties should be finally determined.

Further facts appear by the following opinion of the court below:

" The firm of Jennings, Beale & Co., Limited, was organized on the 27th of October, 1886, for the purpose of the manufacture and sale of steel. The company, as organized, consisted of the following named persons: Joseph G. Beale, Benj. F. Jennings and John Davis; Beale and Jennings each holding seventy shares of the capital subscribed, and Davis ten shares. The said association dated from October 1, 1886, and was to continue for the term of four and three fourths years, unless sooner dissolved by a vote of the majority in number and value of interests of the members.

" By the terms of the articles of the association, Joseph G. Beale was chosen as superintendent of the manufactory; but owing to some misunderstanding among the members of the company, he tendered his resignation as superintendent on October 14, 1887, to take effect not later than October 25th. This resignation was not acted upon by the company until No-

vember 22, 1887, and, before any action was taken thereon, Beale withdrew his resignation. Notwithstanding his withdrawal, the stockholders accepted the resignation, declared the office of superintendent vacant and placed this branch of the work in the hands of the chairman, B. F. Jennings. Joseph G. Beale, believing this action of the company to be contrary to law and a subversion of his rights, refused to yield control as superintendent; whereupon a bill was filed by the other stockholders on the 23d of December, 1887, praying that Beale be restrained, first by preliminary injunction and afterwards by final injunction, from interfering in any manner whatsoever with the business and works of the said partnership association, or from acting or claiming to act in any way as superintendent of manufactory for said association. A preliminary injunction was refused by the court, but on appeal was granted by the Supreme Court [2 Mona. 188]. On August 20, 1888, a supplemental bill was filed, praying that an account be taken of the loss and damage sustained by said association by reason of Beale's unlawful usurpation of authority, and his careless, negligent, unskillful and extravagant management of the works of said association. On December 30, 1889, the defendant, Beale, filed his cross bill, praying, first, that his salary as superintendent be paid him; and, second, that the individual plaintiffs be surcharged with any damage or loss which may have been sustained by him by reason of the bad conduct and mismanagement on the part of B. F. Jennings during the time in which he had entire control of the business of the firm.

"The original bill and answer, the plaintiff's first supplemental bill and the defendant's cross bill were all referred to J. P. Colter, Esq., as master and examiner, who made report thereon. And upon this report a decree was made by the court dissolving the preliminary injunction and dismissing the original bill and the first supplemental bill at the cost of plaintiffs therein; and it was further decreed that, pursuant to the prayer of J. G. Beale in his cross bill, there be paid out of the assets of the firm of Jennings, Beale & Co., Limited, to J. G. Beale, the sum of $5,042.90, with interest thereon from July 1, 1890, and that the plaintiffs pay the costs on said cross bill [146 Pa. 125].

"The partnership association of Jennings, Beale & Co., Lim-

ited, was, on the 25th of June, 1889, dissolved by mutual consent and liquidating trustees appointed. The trustees have filed an account of their settlement of the affairs of said company, to which account exceptions have been filed by Joseph G. Beale. These exceptions are now before us for disposal.

" Our excuse for stating at length the proceedings had in the contest between Joseph G. Beale and the other members of the firm is, that the liquidating trustees have claimed credit in their account with the costs that accrued upon the proceedings had in the equity court, to which credit Beale excepts ; and in order that their different claims may be fully understood, it is necessary to have a statement of the facts.

" As the sustaining or dismissing of a majority of the exceptions depends upon whether the firm of Jennings, Beale & Co., Limited, or the individual members thereof, other than Mr. Beale, should pay the costs of the litigation in the equity case at No. 69, March term, 1888 [146 Pa. 125], we will consider that question first [exception 4]. We have already given a history of the proceedings in equity, and the result of the same. Now, from the facts and the decree entered in that case, we must say who is responsible for these costs. The court entered a decree ordering the plaintiffs to pay these costs. Who is meant by the plaintiffs? Are they Jennings, Beale & Co., Limited, or are they the individuals named as plaintiffs? We confess that the order as to the payment of costs is obscure and indefinite as to who is meant. Had the court meant that the individuals named as plaintiffs should pay the costs, they could have named them in the decree ; and with equal force we may say, had the court meant by the decree that the company should pay the costs, they could have so named it in the decree by saying that plaintiff company should pay the costs. The expression, however, is that plaintiffs pay the costs. The company is composed of individuals, and their names are upon the record as plaintiffs. It is a suit against one of their number, and in making the decree the court uses the word ' plaintiffs ; ' that is plural—means more than one. Now, is it not more reasonable to conclude that the court by this expression meant the individuals named as plaintiffs should pay these costs than to conclude that it was meant thereby that the company should pay them ? And this view is supported by the fact that the decree

was in favor of the defendant, who was a member of the firm; and if the firm has to pay these costs, Beale would be called upon. to not only defray his own expenses in defending his rights, but would also have to pay an amount, based on shares of stock held by him, of the expenses incurred by the litigation instigated by the other members of the firm to deprive him of his rights. It should not be forgotten that the proceedings were in a court of equity, and it would be inequitable to require Beale, as a member of the firm, to pay costs in a litigation instituted to deprive him of his rights, which the law said were his. We hold, therefore, that the just, correct and equitable meaning of the decree of May 4, 1891, is that the individual plaintiffs should pay the costs incurred in the equity proceedings at No. 69, March term, 1888, and that the liquidating trustees are not entitled to claim credit therefor in their account.

" The 'statement of sundry expenses incurred in settlement of business,' amounting in the aggregate to $2,518.77, claimed as a credit by the trustees in their account, cannot be allowed, excepting, however, the first three items and the last item, viz.: Nov. 14, 1891, cash paid acknowledged certificate $2.00; Nov. 14, 1891, cash paid recording same $3.50; cash paid acknowledging deed of John Davis $.50; Dec. 10, advertising notice of dissolution $4.50; total $10.15. Thus leaving the amount for which the trustees cannot claim credit in their account at $2,508.27.

"The item of credit $250 paid D. T. Watson, also credit of $700, balance of master's fee, costs paid Prothonotary Henry, $94.85, cannot be allowed as a credit, for the reason as above stated, because they are expenses incurred in the litigation in the equity case. [Exceptions 5, 6 and 7.]

"Exception 4th (so far as the same relates to expenses and costs in equity case), and exceptions 5th, 6th and 7th are therefore sustained.

" That portion of exception 4th in reference to the salaries from July 1, 1889, to October 12, 1889, will now be considered. The items which aggregate the credit claimed of $5,381.49, and especially set forth in the 10th exception, and the portion of this credit referring to salaries in its items, amount to $2,862.12. It appears that the liquidating trustees made sale of the prop-

erty on October 12, 1889, to B. F. Jennings et al. for the sum of $100,000, sale to take effect as of the date of July 1, 1889. The evidence produced on the hearing of these exceptions shows that the said items, aggregating $2,862.72, are for salaries of persons employed by the liquidating trustees in conducting and caring for the business of the firm of Jennings, Beale & Co., Limited, from July 1, 1889, the date at which the sale by agreement took effect, to October 12, 1889, the date at which the sale was really executed, and that the men whose salaries represent this sum were employed by the liquidating trustees in the management and care of the business. It could not be contended that had these trustees performed this service themselves they would not be entitled to be paid therefor out of the assets of the company; and why not pay the men who performed it for them? The exceptant contends that because the trustees have not accounted for the product of the mill from July 1st to October 12th that they are not entitled to this credit. It is not disputed but that the sale was made to take effect as of the date of July 1st, consequently the purchasers are entitled to the product after that date, and as this item of credit is for expenses incurred by the trustees in managing and settling up the partnership, it should be allowed as a proper credit in their account as liquidating trustees. Therefore, exception 4th is dismissed, so far as the same relates to salaries.

"Exception 11th we must sustain, as from an examination of the account we cannot see but that it is error for the accountants to claim a credit for interest due Jos. G. Beale. This item is interest due upon the mortgage, and is not to be paid out of the assets of the firm, but is to be paid by the purchasers on the mortgage. In paragraph sixth in preface to this account, the trustees say that this amount of interest, viz., $2,946.79, is due to Joseph G. Beale as interest on his share of the net assets of the firm to the date of payment to them of the purchase money.

"The 13th and 14th exceptions are sustained. The accountants have not charged themselves with any interest, except as we have stated as set forth in the sixth paragraph in the preface to their account. An account of this nature should contain the debits and credits set forth in figures on the different sides of the account, and balance struck showing the exact amount of

balance for distribution.   In this account the trustees have not charged themselves with any interest, except by inference.

" Objection is made to the charge of $500 made by B. F. Jennings for services as liquidating trustee ; and it is contended in support of this objection that because he was a member of the partnership he cannot claim for services.   Ordinarily in the settlement of partnership business this objection would be good; but the partnership being dissolved and liquidating trustees appointed, the amount charged does not go to him as a partner, but as a liquidating trustee, just the same as though he had never been a member of the firm.   We cannot see by what principle of law Jennings can be deprived of compensation as liquidating trustee.   He should be paid for his services, and the trustees allowed a credit for the same in their account.

" The liquidating trustees therefore are ordered and directed to amend their account and distribution by making the corrections indicated and set forth in the foregoing opinion, the same to be done within ten days, and when thus corrected the account will be confirmed."

*Errors assigned* were (1–7) in sustaining above exceptions, quoting them respectively.

*W. D. Patton* and *W. K. Jennings*, for appellants, cited : Dexter v. Arnold, 3 Mason, 289 ; Gyger's Ap., 62 Pa. 73 ; Clarke v. R. R., 136 Pa. 408.

*Orr Buffington* and *M. F. Leason*, for Jos. G. Beale, appellee.

### HOWARD'S APPEAL.

PER CURIAM, October 23, 1893 :

An examination of the record with special reference to the several specifications of error has failed to convince us that the learned judge of the court below committed any error of which the appellants have any just reason to complain.

The decree of the court of common pleas is therefore affirmed and appeal dismissed, with costs to be paid by the appellants.

### JENNINGS'S APPEAL.

PER CURIAM, October 23, 1893 :

This case was argued with No. 93 of this term in which a de-

cree has just been entered. We find nothing in the record that requires either a reversal or modification of the decree from which this appeal was taken. Neither of the specifications of error is sustained.

Decree affirmed and appeal dismissed with costs to be paid by the appellants.